UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 11-cr-20314

Paul D. Borman
v.                                                United States District Judge

JOHN BRAVATA and
ANTONIO BRAVATA,

        Defendants.
_____/

## OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION *IN LIMINE* TO BAR EVIDENCE OF SATISFIED INVESTORS (ECF NO. 171)

This matter is before the Court on the Government's Motion *in Limine* to Bar Evidence of "Satisfied Investors." (ECF No. 171.) Defendant John Bravata filed a response (ECF No. 176) and the Government filed a reply (ECF No. 184). The Court heard oral argument on the matter on February 25, 2013. At oral argument, Defendant Antonio Bravata joined in the response and argument of Defendant John Bravata. For the reasons that follow, the Court GRANTS the Government's motion.

The parties are in agreement that the Defendants may not present evidence of "satisfied investors" to refute the testimony of the Government's investor witnesses. Indeed, the case law is clear on this point. For example, in *United States v. Elliott*, 62 F.3d 1304 (11th Cir. 1995), the defendants were charged with multiple counts of mail and securities fraud in connection with the sale of interests in certain real estate investments. The record contained "ample evidence that Elliott Enterprises was suffering huge financial losses at the same time that Elliot and Melhorn were

1

representing [to investors] that their investments were profitable and secure." *Id.* at 1308 n. 4. The evidence at trial demonstrated that the defendants "retained their current investors and attracted new ones by making false claims regarding the safety and performance" of their investments. Specifically, the evidence demonstrated that:

> Elliott Enterprises "lulled" its investors by sending regular, competitive interest payments at rates just above the market rate. Elliott Enterprises was able to maintain these payments, despite huge, mounting losses, by the use of a Ponzi, or pyramid, scheme: interest payments were funded not only by returns from underlying investments, but also by the principal from newer investor funds. On some occasions, Elliott and Melhorn and their employees solicited new investments in Elliott Enterprises in order to cover interest payments that were coming due.
>
> Both Elliott and Melhorn profited enormously from this arrangement. Elliott's extravagant lifestyle included multimillion dollar residences, resort homes, and luxury automobiles.

62 F.3d at 1306. The amended indictment in *Elliott* named nineteen victims and approximately 940 Elliott Enterprises investors filed claims with the receiver. *Id.* at 1307.

The district court excluded proffered testimony from "satisfied Elliott Enterprises customers," none of whom were named in the indictment, who were expected to testify "to their belief that Elliott and Melhorn had committed no wrongdoing" and that "the two defendants had kept their promise to secure these particular investments with collateral." *Id.* at 1307-08. The Eleventh Circuit upheld the district court's evidentiary ruling, finding that the fact that certain investors may have been satisfied with defendants or with the results of their investments was irrelevant to a determination of whether defendants made fraudulent representations to the Government's witnesses/victims who did believe that they had been defrauded:

> Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To the extent

that Elliott and Melhorn proffered the witnesses to show that these investors did not believe that they had been defrauded, that they had received a portion of their money back upon request, that Elliott had told these investors to testify truthfully before the SEC, or that Elliott had backed these investors with the appropriate collateral as he had promised, the district court properly excluded this testimony as irrelevant. See Fed. R. Evid. 402. The fact that Elliott and Melhorn avoided wrongdoing in their dealings with five customers not named in the indictment is inconsequential in determining whether both made fraudulent representations to the nineteen victims listed in the indictment.

62 F.3d at 1308.

The Eleventh Circuit in *Elliott* distinguished *United States v. Thomas*, 32 F.3d 418 (9th Cir. 1994), a case in which the Ninth Circuit had reversed the district court's evidentiary ruling excluding the testimony of "satisfied" fruit growers who had benefitted under the defendant's scheme of quoting false prices in the business of brokering sales of fruit between the growers and retail merchants to "average out" market fluctuations. 32 F.3d at 418. The Eleventh Circuit noted that the scheme and intent at issue in *Thomas* differ[ed] significantly from the scheme and intent" in *Elliott* because "[o]verall the growers impacted by the averaging scheme actually came out ahead," rendering testimony from satisfied growers relevant to defendant's claim "that he did not intend to profit from his admittedly fraudulent representations." Distinguishing *Thomas*, the Eleventh Circuit reasoned:

> Proving intent in this case, however, is not a simple matter of accounting for economic surplus. The material misrepresentations here center on the purported financial health of the Elliott Enterprises businesses and the performance and safety of its investments. No amount of testimony from satisfied customers could "average out" Elliott and Melhorn's intent to defraud when they continued to solicit new investments and reassure old investors while concealing millions of dollars in losses per year with fictitious audits and phantom collateral. To a much greater degree than was the case in *Thomas*, the proof of Elliott and Melhorn's intent to defraud lies in the substance of their misrepresentations, not in the cumulative impact of those misrepresentations on all of their customers. Thus, the district court did not err by excluding the proffered testimony as irrelevant.

62 F.3d at 1308-09. So too here. As the Eleventh Circuit noted in *Elliott*, such "averaging" is especially inappropriate in a case alleging a pyramid scheme that, by its very nature, will include a certain number of "satisfied" customers:

> Despite Elliott and Melhorn's arguments to the contrary, such a calculus of victims would be especially inappropriate in the case of a Ponzi or pyramid scheme. A Ponzi scheme impacts individual investors differently, depending on how much of their initial investment particular investors had recovered before the pyramid's inevitable collapse. As the district court observed "if ... this, in fact, was a Ponzi scheme, obviously the first people ... are going to make money. That's the nature of the Ponzi scheme."

62 F.3d at 1309 n. 5.

Defendants have been unable to convincingly articulate some relevance to their proffered satisfied customer testimony that does not run afoul of inviting the impermissible inference that Defendants' dealings with other investors who did not feel deceived somehow refutes the testimony of those investors who testified that they did feel that they were defrauded by the Defendants' representations and omissions.

At oral argument, counsel for Defendant also argued that the jury should hear from other investors who will testify that the alleged misrepresentations and/or omissions simply were not important to them. But, as the Court has noted, that some investors may not have felt deceived is simply irrelevant to the Government's case and the jury will not be called upon in this case to weigh the evidence of investors' opinions of whether or not they felt defrauded in order to determine the materiality of Defendants' misrepresentations and omissions.

The proof of Defendants' intent to defraud "lies in the substance of their misrepresentations, not in the cumulative impact of those misrepresentations on all of their customers." 62 F.3d at 1308. No amount of "good deed" evidence relating to other investors can refute the testimony of investors

who felt that they were defrauded by Defendants' conduct. Defendant does not propose to proffer through these satisfied investors evidence that the Government witnesses in fact were told or read something different than they testified that they were told, heard or read. These proposed witnesses will testify to their own presumably more positive experiences with their investments in BBC, suggesting to the jury that they should "average out" the Defendant's fraudulent and non-fraudulent conduct in reaching their conclusions on the issue of the materiality of the various statements and omissions attributed to the Defendant.

The Court will instruct the jury on the standard to apply in deciding the issue of the materiality of statements attributed to the Defendant. The standard in the Sixth Circuit, as the parties agree, is an objective one and the determination of whether the statements made by Defendant would have been material to a reasonably prudent investor is to be made by reference to an objective standard. Sixth Circuit Pattern Jury Instruction 10.01, Mail Fraud (18 U.S.C. § 1341), provides in relevant part: "A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension." *Sixth Circuit Pattern Jury Instruction*, 10.01 (2)(D). As explained in the Commentary to this instruction:

> As to whether the fraud must be capable of deceiving persons based on a subjective ("however gullible") standard or an objective ("person of ordinary prudence") standard, in most cases the objective standard provided in paragraph (2)(D) of the instruction is appropriate. The Sixth Circuit has stated that the standard to use is an objective one.

*Committee Notes to Sixth Circuit Pattern Jury Instructions,* Ch. 10 p. 270 (citations omitted).

The Court is confident that the instruction will impress upon the jury that the standard of materiality is not to be determined by the subjective beliefs of any of the witnesses who testified but

5

by the juror's own understanding of what a reasonably prudent investor would believe may have influenced an investment decision. The jurors will be free to conclude that the Government witnesses were not reasonably prudent and to conclude that despite their subjective belief that they were defrauded, in fact the Defendant's representations, misrepresentations or omissions were simply not material. In addition, any probative value that might be gained from allowing a cadre of satisfied investors to testify and to add to the mix their subjective beliefs regarding the materiality of Defendant's representations, misrepresentations or omissions to their peculiar investment decisions, is outweighed by the significant potential that such testimony has, under Fed. R. Evid. 403, to confuse the issues and mislead the jury as to their task in determining what a reasonably prudent investor would have considered material in making a decision to invest in BBC.

Accordingly, the Court will GRANT the Government's motion (ECF No. 171) and will bar evidence and testimony of "satisfied investors."

IT IS SO ORDERED.

_____
Paul D. Borman
United States District Judge

Dated: 2-26-13