UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                         CRIM. CASE NO. 11-20314

v.                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

JOHN BRAVATA and
ANTONIO BRAVATA,

               Defendants.

_____/

**ORDER DENYING DEFENDANT JOHN BRAVATA'S MOTION
FOR  A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33,
JOINED IN BY DEFENDANT ANTONIO BRAVATA**

      On May 6, 2013, Defendant John Bravata filed a Motion for New Trial under Fed. R.

Crim. P. 33.  The Government filed a Response.  Defendant filed a Reply.  The Court has

determined that there is no need for oral argument. E.D. Mich. L. R. 7(f).

      Defendant John Bravata was tried before a jury and was found guilty of Conspiracy to

Commit Mail and Wire Fraud 18 U.S.C. §1349, and 14 Counts of Wire Fraud, 18 U.S.C. §1343.

He now moves this Court to vacate the judgment of conviction and grant him a new trial.

Defendant John Bravata's motion for a new trial asserts the following claims:

I.       Denial of Right to Present a Defense:

       A.  Advice of John Sellers to Defendant

       B.  Testimony of Investors Not Called by the Government

       C.  Testimony as to Financial Condition of Company Prior to Its Being Shut Down

II.     Prejudicial Variance Between Charge in Indictment and Proofs as to Count Nine.

III.    Denial of Right to Cross-Examine Government Witnesses as to the letters sent to them by
        FBI advising them that they may have been victims of a crime.

IV.     Violation of Right to a Speedy Trial.

V.      Denial of Right to Hybrid Representation.

        Federal Rule of Criminal Procedure 33 provides that "upon the defendant's motion, the

Court may vacate any judgment and grant a new trial if the interest of justice so requires."  The

Sixth Circuit has stated that a motion for a new trial should be granted only "in the extraordinary

circumstances where the evidence preponderates heavily against the verdict."  *United States v.

Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (internal quotation marks and citation omitted).

**I. DENIAL OF THE RIGHT TO PRESENT A DEFENSE**

        A.  Advice of John Sellers

        Defendant John Bravata asserts that he was denied the right to present his advice of

counsel defense, as to Attorney John Sellers advice.  Specifically, Defendant John Bravata

claims that the Court restricted him from testifying about what advice Attorney John Sellers had

provided him in his business, in his building of his home, and other matters. The trial transcript

supports the Court's rejection of this claim.

        John Sellers testified as a government witness for four days. Defense counsel cross-

examined Sellers extensively on the subject matter of his advice to Defendant John Bravata.

        When Defendant John Bravata testified in his defense, in addition to testifying with

regard to the advice that Sellers's testimony had covered, he sought to testify about other

Sellers's advice that went beyond the subject matter of Sellers's testimony.

        The Court ruled that Defendant John Bravata could testify as to what Sellers previously

2

testified he had advised Defendant, <u>and</u> that Bravata could recall Sellers to the stand, in the Defendant's case, to question him about any additional advice to John Bravata, as long as that testimony was not cumulative of Sellers's prior testimony. Thereafter, Defendant chose to not recall Sellers to the stand.

Thus, the Court provided Defendant John Bravata with the opportunity to fully present his advice-of-counsel defense, while eliminating unjustifiable delay and needless presentation of cumulative evidence.  Fed. R. Evid. 102 and 403.

Defendant John Bravata testified on March 13, 14, 18, and 19, 2013. On March 14, 2013, the Court ruled that John Bravata's attorney could ask him if he was told something by John Sellers that was inconsistent with what Sellers testified to:

> The Court:      And if you want to read the specific thing and say "Is that correct, yes or no," then you can.

> Defense Counsel:      Am I allowed to ask Mr. Bravata what he told Mr. Sellers?

> The Court:      Absolutely. Yeah.

Trial Tr. March 14, 2013, p. 8.

Defendant John Bravata testified on direct examination continuously without restriction, as to what John Sellers told him.  That testimony is contained in the trial transcript:

1. As to what John Sellers told him. Tr. March 13, 2013, p. 53, 57, 76.

2. And that John Sellers made changes in the sales presentation script. Tr. March 19, 2013, p. 17.

3. And that he relied on Sellers' advice. Tr. March 13, 2013, P. 110, p. 152.

4. And that John Sellers handled certain issues. Tr. March 18, 2013, p. 151.

5. And that John Sellers knew about things. Tr. March 13, 2013, p. 110, 148; March 18, 2013 p. 148.

3

6. And that he satisfied Sellers's concerns. Tr. March 13, 2013, p. 155.

7. And that he made the changes Sellers proposed.  Tr. March 13, 2013 p. 160

8. And that he left it up to John Sellers to take care of certain things.
    Tr. March 18, 2013, p. 153.

The Court also permitted Defendant John Bravata to testify about what he told investors, e.g. whether or not he told them their principal was guaranteed safe in certificates of deposit, or whether or not he told them he would take a salary. Tr. March 15, 2013, p. 56-58.

B. Testimony of Satisfied Investors

Defendant John Bravata also asserts that Defendant was denied his right to present a defense because the Court ruled that he could not call as witnesses "satisfied investors," to counter the testimony of Government-called witnesses, who had been named as victims of fraud, in the counts of the indictment.

 In a pyramid scheme, as charged here, it is inherent in the crime that some investors have their investment repaid with later investors's money.  Thus, the fact that there were some satisfied investors does not undermine the charges in the indictment which focused on whether Defendant John Bravata fraudulently induced the victim investors listed in the indictment, to invest based on Defendant's misrepresentations about the operation of the Bravata entities. The Court concludes that the fact that some investors not named as victims in the indictment may not have felt deceived, or received their investment back, was not relevant in determining whether John Bravata's conduct was fraudulent.  *See U.S. v. Elliott*, 62 F.3d 1304, 1308 (11th Cir. 1995) (citing F.R.E. 402 – not relevant testimony). *See also U.S. v. Manning*, 142 F.3d 336, 339, (6th Cir. 1998).

C.  Testimony Regarding Financial Condition of Company Prior To Shut Down

4

Defendant John Bravata's third argument that he was denied his right to present a defense, contends that the Court improperly excluded him from introducing testimony as to the financial condition of the company prior to its being shut down by the court order, sought by the United States Securities and Exchange Commission in his civil case, and entered by Judge David Lawson of this Court. In fact, the Court did permit such testimony from Defendant John Bravata which discussed both the company's last minute financial condition, the court order, and John Bravata's hopes and plans for continuing his business.

## II.  PREJUDICIAL VARIANCE AS TO COUNT NINE

Defendant John Bravata contends that there was a prejudicial variance between the charge and the proofs relating to Count Nine. Count Nine of the Redacted First Superseding Indictment identified the "victim investor" as T.M., the Approximate Date of the transfer as 5/9/2008, and the "Wire Info" as "wire transfer of $22, 359.42 from CA to MI."  Testimony identified the victim TM as Theresa Makowski.

Defendant contends that there was a variance because the evidence established that the $22,359.42 investment was made by her husband Ramon Makowski, not Theresa, and further that Theresa made a separate $3000 investment.

The United States Court of Appeals for the Sixth Circuit has held:

> A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment.  Not every variation between indictment and proof at trial creates reversible error; only those variances that create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" require reversal.  Another way of stating this standard is that a variance exists, "only when a defendant shows 'prejudice to his ability to defend himself at trial, to general fairness of the trial . . ..'"

5

*United States v. Feinman* 930 F.2d. 495, 499 (6th Cir. 1991).

In the instant case, Theresa Makowski testified that she had worked for Defendant John Bravata for nine months in 2007-08, coordinating his marketing seminars.  Trial Tr. Feb. 12, 2013, pp. 68-69. She testified that she invested "approximately $25,000" in BBC Equities in April or May 2008, and that the money "came from a combined source of mine and my husband's 401(k)."  Tr. p. 80.  She testified that there were two separate applications for investments because it was a combination of her 401(k) and her husband's 401(k).  Tr. p. 82. On Government Exhibit 46, the BBC Equities Application for Investment, she is listed as "the joint owner" of this investment with her husband Ramon, and the application is signed by both her and her husband.

The Subscription Agreement, (Government Exhibit 47) listing the $22,349.42 purchase price, lists the purchaser as Ramon Makowski and has just her husband's signature, but taken together the application and subscription documents evidence Theresa as a joint owner. Certainly they put the Defendant on notice of these facts.  Further, Theresa testified that she had filled out Ramon's subscription agreement and that he had signed it.  Tr. p. 118.  Indeed counsel for Defendant John Bravata cross-examined her about her $3,306 investment.  Tr. p. 120.

The Court concludes that the documentary evidence establishes that her husband Ramon's IRA investment listed her as joint owner, that she did the paperwork, that the defense cross-examined her fully and completely as to the investment(s), and that this is not a material variance requiring a reversal due to surprise or inability to cross-examine.

## III.  DENIAL OF RIGHT TO EXAMINE WITNESSES RECEIVING LETTERS EXPLAINING WHY THEY COULD BE CONTACTED BY THE F.B.I.

Defendant John Bravata contends that the Court erred in excluding testimony from

6

victims testifying for the government that, prior to meeting with investigating FBI agents, they had received a letter from the United States Attorney stating "that a crime was committed and may have been a victim of a crime."  Defendant John Bravata's Motion for New Trial, p.8.

The Government responded that the letters in question "referred to the recipients only as 'possible victims' . . . were sent in compliance with federal victim/witness regulations and informed the recipients that 'if they were victims,' they had certain rights." Government Response in Opposition to Defendant John Bravata's Motion for New Trial p.11.

At trial, the Government noted that the letters set forth the crime victim statute that requires them to send such notification. Trial Tr., Feb. 6, 2013, p.121.

Further, the fact that the FBI interviewed a victim/witness prior to trial, was brought out in extensive witness cross-examination by defense counsel. The Defense also cross-examined extensively about meetings between Government witnesses and Assistant U.S. Attorneys prior to trial.  Thus, the jury was made fully aware of FBI and Assistant U.S. Attorney interviews of victims/witnesses before trial that dealt with the criminal activity in this case.

The Court concludes that these Government victim/witness letters did not "poison the well."  The Court also concludes that to permit introduction of these letters would require "drilling down" into the statutory basis for the initiation of the letters, and would be excludable as confusing and not relevant to this trial.

## IV.  VIOLATION OF DEFENDANT'S RIGHT TO A SPEEDY TRIAL

Defendant John Bravata contends that he was denied his right to a speedy trial. The record of this complex case indicates that painstakingly, time and again, on the record, Defendant waived his right to speedy trial. These knowing and voluntary waivers were

occasioned because Defendant John Bravata was, *inter alia*, requesting and then receiving new counsel, an additional second counsel to assist in this complex and document-intensive case, multiple requests for defense experts that were granted, multiple hearings requested by Defendant to request and receive special treatment by the U.S. Marshal, resulting in continuing changes of his location, to facilitate his in-custody preparation for the trial. This also included a special court hearing, where the Court ordered the presence of a federal prison official to facilitate and expedite Defendant John Bravata's ability to use a computer, to permit his attorneys to bring in special electronic equipment to the jail, and also to provide him with special housing and other special privileges.

## V.  DENIAL OF RIGHT TO HYBRID REPRESENTATION

Finally, Defendant John Bravata contends that he was entitled to hybrid representation – not only to receive two court appointed lawyers to represent him, but also to be permitted to represent himself, in part, so that he could personally question witnesses and make some arguments to the jury. Notably, Defendant's brief does not cite any authority, because there is no legal authority supporting such a "right."

The United States Court of Appeals for the Sixth Circuit has stated:

It is well settled that there is no constitutional right to hybrid representation.

*United States v. Cromer*, 389 F.3d 662, 681, n.12 (6th Cir. 2004).

Defendant received the representation of two excellent attorneys.  In addition, when Defendant John Bravata asked for new counsel, contending that he could not get along with his first attorney, the Court appointed one, and then, based on need for additional counsel, appointed a second attorney. Throughout the pre-trial period, the Court also authorized John Bravata's

8

legal team to utilize many experts to assist in his case. Defendant John Bravata was advised by the Court that he could represent himself; he declined.  His case was  competently tried by his two excellent counsel.  There was no error in the Court decision to decline hybrid representation.

**CONCLUSION**

The Sixth Circuit has ruled that a motion for new trial should be granted "where the evidence preponderates heavily against the verdict." *Hughes*, *supra* p. 2.  This is not such a case.

Accordingly, the Court DENIES this Motion.

SO ORDERED.


DATED:  August 20, 2013                                        s/Paul D. Borman_____
                                                                           PAUL D. BORMAN
                                                                           UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 20, 2013.


                                                                           s/Deborah Tofil_____
                                                                           Case Manager