UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

                                    Case No. 11-cr-20314

                                    Paul D. Borman
v.                                    United States District Judge

D-1 JOHN BRAVATA and
D-2 ANTONIO BRAVATA,

               Defendants.

_____/

## ORDER DENYING DEFENDANTS' RENEWED RULE 33 MOTIONS FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE AND DENYING DEFENDANTS' MOTIONS FOR AN INDICATIVE RULING (ECF NOS. 379, 380, 392)

This matter is before the Court on Defendant Antonio Bravata's "Motion for An Indicative Ruling Regarding Defendant's Renewed Rule 33 Motion for New Trial Based on Newly Discovered Evidence," filed on October 30, 2014. (ECF No. 379.)[1] Defendant John Bravata joined in Defendant Antonio Bravata's motion (ECF No. 380) and subsequently filed a separate "Motion for an Indicative Ruling Regarding Renewed 33 Motion for New Trial (R379) Based on Newly Discovered Evidence" (ECF No. 392).[2] Specifically, Defendants seek a ruling from this Court indicating either (1) that it

---

[1] On November 3, 2014, the United States Court of Appeals for the Sixth Circuit held the appeal of this case in abeyance pending this Court's resolution of the new trial motions. The Court of Appeals indicated that the Clerk's Office of the Sixth Circuit will issue a new briefing schedule or give the parties other instructions when the new trial motions have been resolved. *United States of America v. John Joseph Bravata*, No. 13-2380/2591 (ECF No. 45, 6th Cir. Nov. 3, 2014).

[2] The Court notes that on December 16, 2014, the Sixth Circuit granted Defendant/Appellant John Bravata's motion to withdraw court-appointed counsel and granted John Bravata leave to proceed pro se on appeal. *United States of America v. John Joseph Bravata*, No. 13-2380/2591 (ECF No. 46, 6th Cir. Dec. 16, 2014).

1

would grant the Defendants' renewed motions for new trial if the Sixth Circuit were to remand for this purpose or (2) that it finds the motions raise a substantial issue that may merit remand. The Court has determined that oral argument would not assist in resolving the issues raised in the motions and orders submission and determination without hearing. E.D. Mich. L.R. 7.1(f)(2). The Court concludes that the Defendants' motions do not raise a substantial issue and finds no merit in Defendants' renewed motions for new trial based on newly discovered evidence. Accordingly, the Court DENIES the renewed Rule 33 motions for a new trial and DENIES the motion for an indicative ruling.

## I.   JURISDICTION

On March 14, 2013, shortly after the 30th day of trial had begun, the Court dismissed Juror #4, who was ill and was unable to serve that day, and replaced Juror #4 with an alternate juror. Defendants now ask this Court to consider their motions for a new trial, filed under Fed. R. Crim. P. 33(b)(1), based upon allegedly newly discovered evidence, specifically the October 14, 2014 Affidavit of dismissed Juror #4. Federal Rule of Criminal Procedure 33 provides that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty" and further provides that "[i]f an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." Fed. R. Crim. P. 33(b)(1). "The traditional rule is that a timely appeal divests the district court of jurisdiction to reconsider its judgment until the case is remanded by the Court of Appeals." *Dunham v. United States*, 486 F.3d 931, 935 (6th Cir. 2007) (internal quotation marks and citation omitted). The Defendants' appeals of their guilty verdicts in this case are currently pending in the United States Court of Appeals for the Sixth Circuit. Accordingly, this Court would generally lack jurisdiction to address Defendants'

2

renewed Rule 33 motions.

Acknowledging this jurisdictional hurdle, Defendants seek a ruling from this Court indicating

to the Sixth Circuit that this Court has considered the motions for new trial and would grant the

motions for a new trial if the case were remanded or indicating to the Court of Appeals that the

motions present substantial questions, warranting remand from the Sixth Circuit. Defendants rely

on Fed. R. App. P. 12.1, which addresses the procedure to be followed in the event that a district

court issues an "indicative ruling" suggesting remand. "Remand is in the court of appeals' discretion

under Federal Rule of Appellate Procedure 12.1." Fed. R. Crim. P. 37 Advisory Committee Notes,

2012 Adoption.

This Court's analysis begins, however, with Fed. R. Crim. P. 37, which outlines the options

available to the district court when presented with a motion that is otherwise barred due to the

pendency of an appeal:

> Rule 37.  Ruling on a Motion for Relief That is Barred by a Pending Appeal
>
> (a) Relief Pending Appeal.  If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> > (1) defer considering the motion;
> > (2) deny the motion; or
> > (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.
>
> (b) Notice to the Court of Appeals.  The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.
>
> (c) Remand.  The district court may decide the motion if the court of appeals remands for that purpose.

Fed. R. Crim. P. 37.  A statement issued by the trial court pursuant to subsection (a)(3), suggesting

3

that remand to the trial court would be appropriate, is commonly referred to as an "indicative ruling." *See* Fed. R. Civ. P. 37, 2012 Advisory Committee Notes ("Experienced lawyers often refer to the suggestion for remand as an "indicative ruling."). "In the criminal context, the Committee anticipates that Criminal Rule 37 will be used primarily if not exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1)." *Id.* In this case, for the reasons that follow, this Court DENIES the Defendants' renewed Rule 33 motions and DENIES the motions for an indicative ruling.

## II.    STANDARDS FOR GRANTING A MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

Defendants move for the second time under Fed. R. Crim. P. 33 for a new trial, now alleging newly discovered evidence.[3] *See* Fed. R. Crim. P. 33(b)(1). The decision to grant a new trial is "addressed to the sound discretion of the trial judge whose decision is not to be disturbed absent a showing of abuse of discretion." *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). In making a motion for new trial based on newly discovered evidence, Defendants must demonstrate that the evidence:

(1) was discovered only after trial,
(2) could not have been discovered earlier with due diligence,
(3) is material and not merely cumulative and impeaching; and
(4) would likely produce an acquittal if the case were retried.

*Barlow*, 693 F.2d at 966. The Government concedes the first element but argues that Defendants have failed to establish any one of the remaining three. The Court agrees.

---

[3] With regard to Defendants' first Rule 29/33 motions, the jury delivered its verdict on March 27, 2013. The Court entered an Order on April 24, 2013, granting Defendants an extension of time to May 3, 2013, to file their Rule 29/33 motions. (ECF No. 238.) On May 1, 2013, the Court entered an Order granting an additional 3-day extension of time to file the original Rule 29/33 motions (ECF No. 244), which were then timely-filed on May 6, 2013. (ECF Nos. 245-249.)

4

## A.      Diligence in Discovering the Evidence

The Defendants did object on the record during the trial to the Court's decision to dismiss

Juror #4 and replace him with an alternate juror rather than adjourn the trial until Juror #4 was able

to return.  Defense counsel did not, however, request that Juror #4 be questioned in open court nor

did either of the Defendants request to voir dire Juror #4 themselves.  This is likely because Juror

#4's illness was evident to everyone in the courtroom that day, based upon Juror #4's own statements

on the record approximately twenty-five minutes into the trial, that he was not feeling well and

doubted whether he would be able to continue to serve that day.

As discussed more fully below, immediately following Juror #4's statement, the Court took

a recess during which Juror #4 was further evaluated by the Court Nurse and an EMT Marshall, and

eventually dismissed.  The Court did inform the parties, when trial proceedings recommenced that

morning, that it had summoned the Court Nurse to evaluate Juror #4 and further explained to the

parties that the Court had thereafter communicated with Juror #4 in the jury assembly room to

confirm his continuing illness and inability to serve, and had dismissed him and thanked him for his

service:

> Let me just state for the record that I did go down – you all can sit down – to the jury
> room to see for myself the condition of the juror, to talk with him, because I had just
> heard from other court people, but I wanted to make sure that that was his feeling,
> that he is not well at all, that he can't concentrate.  And so I did confirm that and I
> excused him from service.

ECF No. 223, Transcript of Jury Trial, Volume 30, held on 3/14/2013 at 35:17-23. (Hereinafter

3/14/13 Jury Trial Tr. at __.)

Despite having been fully apprised by the Court that day that communications had occurred

between the Court and Juror #4, Defendants never objected to those communications, never asked

to question Juror #4 themselves and waited well over a year and a half to contact Juror #4 to obtain

his recollection of events that transpired on March 14, 2013. Defendants offer two excuses for their

delay: (1) that Juror #4 lives 100 miles from the courthouse and works out of state, and (2) that

Defendants were only alerted to the need for his Affidavit after the Court filed its August 27, 2013

Opinion and Order (ECF No. 275) denying their initial motions for a new trial. Neither excuse

justifies the year and a half delay from the date that Juror #4 was dismissed from service.

First, the fact that Juror #4 lives a good distance from the courthouse surely is no excuse for

Defendants' failure to contact him sooner - Juror #4 managed to attend trial in this courthouse from

his home everyday for a period of several weeks. There is simply no reason Counsel could not have

made the journey themselves at an earlier time.

Second, with regard to the alleged "revelations" contained in the Court's August 27, 2013

Opinion and Order denying Defendants' original Rule 33 motions, there is no excuse given for

waiting another year after the Court's filing of that Order to seek out and obtain Juror #4's version

of events.

In any event, any additional details regarding communications with Juror #4 mentioned in

the Court's August 27, 2013 Opinion and Order do not explain or excuse the delay in seeking Juror

#4's Affidavit – the fact of the Court's communication with Juror #4 the day he was dismissed from

service was well known to Defendants during the trial, and defense counsel were well aware of the

comings and goings of the Court Nurse and of the Court's subsequent discussion in the jury

assembly room, off the record, with Juror #4, which the Court summarized on the record, as quoted

above, after returning from dismissing Juror #4 from service. 3/14/13 Jury Trial Tr. at 35:10-11, 17-

23. Having been informed expressly by the Court that communications outside of their presence had

6

occurred, neither of the Defendants placed an objection on the record to those communications or sought to determine more precisely the nature and content of those communications. Nothing prevented the Defendants from seeking to voir dire Juror #4 that day or from contacting Juror #4 immediately after the trial, when events were fresh in his mind, to determine the nature of any communications that might have occurred between the Court and Juror #4 outside the presence of the Defendants or their counsel. If Defendants had concerns, in the exercise of reasonable diligence, they could have obtained the Affidavit at an earlier time. Instead, and inexplicably, they waited more than 17 months to obtain Juror #4's recollection of events that transpired the day he was dismissed. Defendants fail to satisfy the due diligence element of the *Barlow* test.

## B.    Materiality of the Evidence and Likelihood of a Verdict of Acquittal

The Government argues that the Affidavit of Juror #4 is not material because this Court has discretion to dismiss a juror who becomes ill and to substitute an alternate juror, and asserts that nothing in the Affidavit of Juror #4 establishes that the Court abused that discretion. Federal Rule of Criminal Procedure 24(c)(1) provides in relevant part that the Court "may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." The Sixth Circuit has steadfastly upheld the trial court's discretion "to dismiss a juror and replace him with an alternate, or dismiss an alternate for illness, hardship or other cause." *United States v. Gay*, 522 F.2d 429, 435 (6th Cir. 1975). It is not disputed that "such dismissals are within the discretion of the trial judge and do not require the consent of the parties," subject to review only for an abuse of discretion. *Id. See also United States v. De Oleo*, 697 F.3d 338, 341-42 (6th Cir. 2012) ("A district court may replace a juror with an alternate when a juror is either unable or disqualified to perform juror duties. . . . [and] [t]he consent of the parties is not

7

needed if the district court has reasonable cause to replace the juror.") (internal quotation marks and

citations omitted) (alterations added); *United States v. Brown*, 571 F.2d 980, 987-89 (6th Cir. 1978)

(finding no error in trial court's dismissal of a juror whose wife was reported to have received

threatening phone calls, without first permitting counsel to cross examine the juror, where the trial

court held a conference with defense counsel to explain the circumstances of the threat and the

decision to excuse the juror and permitted defense counsel to raise questions about the dismissal).

     *Gay* also establishes, however, that the trial court's discretion to dismiss a juror and replace

that juror with an alternate is not unbounded and must be exercised with deference to a defendant's

right, expressed in Fed. R. Crim. P. 43, "to be present . . . at every stage of the trial including

impaneling the jury . . . ." Specifically, the Sixth Circuit in *Gay* explained:

> The defendant should have an opportunity to object to requests for excuses from the
> jury and to make a record of the proceedings. This holding does not affect the
> discretion of the trial court to dismiss a juror and replace him with an alternate, or
> dismiss an alternate for illness, hardship or other cause. However, even though such
> dismissals are within the discretion of the trial judge and do not require the consent
> of the parties, his discretion is always subject to review for abuse, and a record is
> necessary for such review.

> The Supreme Court noted in *Rogers [v. United States*, 422 U.S. 35 (1975)] that "a
> violation of Rule 43 may in some circumstances be harmless error . . . ." (95 S.Ct.
> 2095). Even though the appellant has not been able to demonstrate prejudice in the
> present case, the total absence of a record of the proceedings in which the changes
> in the makeup of the jury occurred requires us to assume prejudice.

522 F.2d at 435. Defendants argue that this Court's "private dismissal" of Juror #4 requires a

presumption of "fundamental unfairness" and consequently demonstrates materiality. (ECF No. 382,

Def.'s Reply ¶¶ 7-8.)

     The Court rejected this prejudice argument in its August 27, 2013 Opinion and Order denying

Defendants' original motions for a new trial and the Court finds nothing in Defendants' renewed

motions for new trial that dictates a different result. In this case, unlike *Gay*, there is a record of the proceedings in which the Court exercised its discretion to dismiss Juror #4 rather than adjourn the trial due to his illness. In Juror #4's Affidavit, he testifies that he appeared for service on "the 30th day of trial" and "had the flu." (ECF No. 379-1, Juror #4 Aff. ¶ 4.) Juror #4's Affidavit further states that two nurses serving on the jury with him had alerted the Court early that morning about his condition, and that the Court Nurse first came to the jury room to check on him before proceedings began, at which time he told the Court Nurse that he had the flu. (Juror #4 Aff. ¶¶ 5-6.) This caused a delay in beginning trial that day from 9:00 a.m. to 9:37 a.m., with the jury finally being seated at approximately 9:43 a.m. (3/14/13 Jury Trial Tr. at 1, 10.) Juror #4 indicated on the record at 10:10 a.m. that he was not feeling well and announced in open court: "I don't know if I'm going to make it all day, Judge." (3/14/13 Jury Trial Tr. at 33:2-3.) The Court took a break and summoned the Court Nurse to evaluate Juror #4, who reiterated to the Nurse and the EMT Marshal accompanying her, that he was not feeling well. Thus, after about 25 minutes of service, at 10:10 a.m, Juror #4 alerted the Court on the record to his illness and expressed doubts about his ability to continue to serve that day. (3/14/13 Jury Trial Tr. at 33.)

Juror #4 testifies in his Affidavit that he had informed the Court Nurse that he had the flu and that when he spoke with the Court Nurse after the 10:10 a.m. break in proceedings, "it is possible [that he] asked to take the day off," although he recalled that he wanted to continue to serve. *Id.* ¶ 15. Juror #4 also notes in his Affidavit that an EMT accompanied the Court Nurse on her second visit to the jury room. *Id.* ¶ 8.

All of this confirms the very facts which led the Court to decide that day, as a matter of trial management, to dismiss Juror #4 rather than adjourn the already seven-week old trial due to his

9

illness – his two contacts with the Court Nurse in the jury room, and his inability to serve the rest

of that day. When proceedings resumed at 10:26 a.m. following the 10:10 a.m. morning break, the

Court informed the parties of Juror #4's condition and explained the Court's decision to dismiss him

from service rather than adjourn the trial. (3/14/13 Jury Trial Tr. at 33:13-19.) The Court permitted

defense counsel to argue their objections to the dismissal of Juror #4 on the record and ruled as

follows:

> Okay. The Court's heard argument. The Court is going to rule that this juror has
> indicated he is clearly not well today. We don't know what's going to happen
> tomorrow. In the past, earlier in the trial, I did take off a day when someone was
> sick. I don't know how long he's going to be sick. We're in the seventh week of trial
> and I believe in the management of the case that it is important that the trial
> continues. That's why we have extra jurors. So that's the ruling of the Court. I'm
> going to walk down to five and thank him for all of his service and then the trial will
> continue in about five minutes.

*Id.* at 34:21-35:7. The Court then took a brief recess from the trial to go down to the jury assembly

room to speak with Juror #4, thank him for his service and excuse him. Trial proceedings resumed

at 10:40 a.m., at which time the Court again stated on the record that he had confirmed Juror #4's

condition and had excused him from service. *Id.* at 35:17-23 (quoted in full *supra* at page 5).

    *Gay* does not require that the Court obtain the consent of the parties before dismissing a juror

due to illness, only that the Court make a record of the proceedings that result in the dismissal, which

the Court did in this case. Juror #4 stated on the record that he did not think he could make it

through the day due to his illness. The Court then summoned the Court Nurse for a second time that

morning, confirmed that Juror #4 was not feeling well and dismissed him from service. Everyone

in the courtroom understood that Juror #4 was ill and no one questioned whether he would be able

to continue to serve that day. Neither of the Defendants asked the Court to voir dire Juror #4 on the

10

record, likely because his inability to serve that day was obvious to everyone. The parties did object to the Court's decision to dismiss Juror #4 rather than adjourn the trial and those objections were noted on the record. 3/14/13 Jury Trial Tr. at 34:2-20. However, the Court was not required to obtain the parties' consent before making the decision to dismiss Juror #4 rather than adjourn the trial for a third time due to juror illness. *Gay*, 522 F.2d at 435. Based upon Juror #4's admitted flu illness and obvious inability to serve that day, this Court made the trial management decision to not adjourn the then seven-week old trial, which had already been earlier adjourned twice due to juror illness, and instead to dismiss Juror #4 and replace him with an alternate so that proceedings, which had only just begun for the day, could continue. A record of the details surrounding Juror #4's dismissal was made that day, as required by *Gay*. Under these circumstances, prejudice is not presumed, materiality has not been established and, as Defendants concede, it is impossible to predict whether further public voir dire of Juror #4, which of course was never requested by either of the Defendants at the time of Juror #4's dismissal, would have resulted in a verdict of acquittal.

## III.  CONCLUSION

For these reasons, the Court DENIES Defendants' renewed Rule 33 motions for new trial based on the Affidavit of Juror #4 and DENIES the motions for an indicative ruling, finding no merit to the renewed Rule 33 motions and no substantial issues presented by the motions.

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated:   MAR 0 2 2015

11