UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RECEIVED

SEP 0 8 2021

PAUL D. BORMAN
U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA
        Plaintiff,

v.

JOHN BRAVATA
        Defendant.

Case No.11-20314
Hon. Paul Borman
Mag. David R. Grand

---

MOTION FOR IMMEDIATE RELEASE TO HOME CONFINEMENT
PENDING FINAL RULING OF PENDING 2255
VIOLATION OF THE CARES ACT, ADMINISTRATIVE PROCEDURE ACT

Now Comes Defendant, Pro se petitioning this Court to remedy his unlawful detention by the Plaintiff. The Defendant request emeergency review in light of the COVID-19 outbreak and the fact that the Defendant is eligible  and has been excepted for immediate release to home confinement under the First Step Act and the CARES ACT.

The Defendant is presently held in the custody of the Federal Bureau of Prison (BOP) at FCI Terre Haute Satalite Camp. The Defendant has now three times been approved and revoked without process or explaination  for immediate release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act and 18 USC 3621(c)(1).

The Defendant meets all criteria set by the BOP and Congress for immediate home confinement. The Defendant has continued confinement during the outbreak of the novel coronavirus 2019 (COVID-19), and in light of the Defendants alternating approval and disapproval of the Defendant for home confinement, violates the Eighth Amendment of the United States Constitution prohibiting cruel and unususal punishment the Fifth Amendment due process clause as it relates to both substantive and pro-cedural due process, and the Administrative Procedure Act requiring government

agencies to act in a way that is not arbitrary and capricious.

Defendant is challenging the continued appropriateness and conditions of confinement.

"Home Confinement" does not mean the person returns to normal life, rather, the person is subject to strict monitoring and restrictions by the Court and Probation Office for the remainder of his custodial sentence.

The home confinement statute not only authorizes, but in fact urges, BOP to "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under the CARES ACT and First Step Act. and 3624(c)(2).

On March 26, 2020, United States Attorney General Barr issued a memorandum urging the BOP to identify "at risk inmates who are not violent" to relocate them immediately to home confinement. Defendant Bravata has been approved and chosen three separate times for immediate release qualifing for all requirements set by congress under the CARES ACT and BOP Policies.

On March 27, 2020, President Trump signed the CARES ACT into law in response to the COVID-19 pandemic, expanding the scope of the home confinement statute.

Specifically, the CARES ACT provides: "During the covered emergency period, the Attorney General finds that emergency condidtions will materially affect the functioning of the Bureau, the director of the Bureau may lengthen the amount of time for which the Director is authorized to place a prisoner in home confinement." See H.R. 748 6002 at Div. B, Tit. II, Sec. 12003(b)(2).

On April 3, 2020, Attorney General Barr in fact issued a memorandum in which he made the requisite finding that emergency conditions will and is materially affecting the functioning of the BOP.

Attorney General Barr directed the BOP to immediately to release inmates from institutions that are already overcome by COVID-19, and extended the order to "similarly situated facilities where you determine that COVID-19 is materially

affecting operations.   Terra Haute was and continues to be releaseing all inmates who meet the qualifications.   Defendant Bravata is one of those inmates approved for release to home confinement.

Attorney General Barr, in his memorandum on April 3, 2020, emphasized that the BOP's mission "Imposes on us a profound obligation to protect the health and safety of all inmates".   The memorandum explained that the CARES ACT authorized Attorney General Barr "to expand the cohort of inmates who can be considered for home release upon finding that emergency conditions are materially affecting the BOP."   Attorney General Barr explicitly made that finding in the April 3 memorandum.

Under the Cares Act and the Attorney Generals directive, because FCI Terra Haute's operations have been materially affected by COVID-19, the BOP has the authority to transfer the Defendant to home confinement to serve his remaing sentence, followed by supervised release.   Infact, the BOP has attempted to release Bravata three times and each time it has been stopped, not because Defendant Bravata has not been deemed a risk for COVID-19, In fact, after not being released due to prosecutor calling and stopping the approved release, Bravata in fact did become positive for COVID-19.

Under the circumstances where Defendant Bravata's case is pending a 2255 for which he is likely to prevail since the Government cannot overcome the violation of Bravata's constitutional rights of the Sixth Amendment and violations of the 5th, and 14th amendment.   Where the government improperly seized the Defendants assets, committed fraud upon the court by saying "all assets were tainted".   Denying Bravata a hearing to release funds for his trial to pay for counsel of choice all in violation of the Supreme Court ruling Luis v. United States, and under 18 USC 3624(c) and 3621(b)(4), this Court has the authority to recommend where a defendant should be incarcerated.   This includes determining wherther a defendant should be confined in home confinement.

Its important to emphasise that the Defendant is a first time, non violent crime, Defendant has served his time and meets all requirements set by Congress to be released.

The Defendant, after being evaluated by the BOP, who is the best to know and to determine Bravata's risk factors, have placed Bravata at a satalite camp. Defendant is catagorized as a minimum risk facility, which has one guard and no fences. He is classified as out custody. He is able to travel freely around the compound. He is allowed to do community service, or attend college and is allowed to corrispond to people from outside the BOP facility.  He is listed as a minimum risk for recidivism by the BOP.  He has a pattern score of 1.  Defendant has received no diciplinary actions and has programmed while incarcerated. There can be no argument he is not fit for home confinement since he has been approved not once, but three times.

On April 1, 2020, the Defendant's name was posted as one of the first approved inmates for immediate release to home confinement.  This list was compiled by theBOP, including the BOP headquarters in Washington, D.C.

Defendant was contacted by his case manager and informed him that BOP headquarters in Washington, D.C. approved him for release because he met all the criteria.

Defendant was instructed to provide the BOP with a home address for release, a list of who was in the home, and anyu medical conditions for people living at the release location.  The Defendant provided the information, Not to his residence in Florida, (he is a Florida resident).  But to his home in Kalamazoo Michigan which is in the Western District of Michigan with his wife.

On April 6th, 2020, the Defendant signed all release papers and was told to call his family and instruct them of his release after a 14 day quarantine.

After enterning quarantine for the first time, and after notifying his family that he would be released.  After being signed off by the Camp Counselor for release, the legal at Terra Haute, the Warden, the Camp Administrator, the Regional Director of the BOP and ultimently Washington DC as well as approval for release to the Western District of Michigan by Probation.  Bravata was pulled from Quarantine and told he was not being released due to the Prosecutor calling and stopping the release. No reason was given.  And no authority for this action was shown.

On April 25, 2020, the Defendant appealed the revocation of his approval for home confinement to Warden Lammer, through the prison electronic message system. The Defendant asked Warden Lammer to review his case because the Defendant qualified for home confinement under the CARES ACT set by Congress.

On April 27, 2020, Warden Lammer responded to the Petitioners email and said he was reviewing the circumstances and stated the following:

"A review of your request reveals the Bureau of Prisons (BOP) is carefully monitoring the spread of the COVID-19 virus. As with any type of emergency situtation we carefully assess how to best ensure the safety of staff, inmates and the public. FCC Terre Haute is implementing the Bureau of Prisons guidance on mitigating the spread of COVID-19. The current plan continues to allow for inmate transfer to pre- release custody. As thy near thier release all inmates are reviewed on an individual basis to determine their eligibility for a period of prerelease confinement, including placement on home confinement. We are in receipt of Attorney General Barr's memo regarding prioritization of Home Confinement as appropriate in response to COVID-19 Pandemic, and will be working to ensure we utilize home confinement, consistent with the memo, to protect the health and safety of BOP staff and inmates inour custody."

On May 5, 2020, Defendant was once againg approved for home confinement. On that date, the Defendant's case manager contacted him to inform him that the BOP headquarters in Washington DC, had approved him a second time for home confinement under the current guidance.

Defendant again signed release papers, which were already prepared, and to enter quarantine within thirty minutes, which the Petititoner did after contacting his family a second time.

Defendant asked his case manager to double check that he was in fact being placed in home confinement because he did not want to put his family, children and wife through the experience of finding out again that he would be released , making arrangements to pick him up to come home, and then finding out that he would not be coming home but would remain in the BOP exposed to the high risk of COVID-19. The Case manager verified that the Defendant approval for home confinement was con- firmed and that his approval was offical a second time.

The Case manager assured the Defendant that the approval for home confinement has been signed off on by the case manager, the Counselor, the FCI Terre Haute Camp

administrator, legal office, Warden Lammer, the regional office, the halfway house, and finally the BOP headquarters in Washington DC.

Defendant signed all release papers, was fingerprinted and began out processing for release again notifying his family of this emotional rollercoaster.

The Defendants offical release date was May 20, 2020.  Defendant was given a time of his release and to arrange transportation and be picked up at 8:30am on May 20,2020.  He was instructed he would have seven hours to report to the halfway house in Kalamazoo, Michigan, where he would attend an orientation and then be released to serve the remainder of his sentence on home confinement under federal supervision.

On May 9, 2020, the Department of Justice (DOJ) sent out letters to all the Defendants investors, notifying them of Defendants release on May 20, 2020.

On that same date, the Defendants case manager informed him that she was sorry but that they had to pull him from pre release quarantine.  She did not know why at this time.   Defendant had to notify his wife and children a second time he would not be coming home.

On May 11, 2020, BOP staff informed the Defendant that the prosecutor from his original case called the BOP and made a request that his approval for home confinement be rescinded.

The Case manager informed the Defendant that she had never seen a prosecutor block an early release from the camp before, as all inmates in FCI Terra Hautes camp are already designated as minimum security levels with an "out custody" status, giving them the highest degree of freedom and movement both within the camp and in the community.

On May 15, 2020 the DOJ sent letters back to Defendants investors stating that "the United States Attorneys office for the Eastern District of Michigan asked to disqualify the Defendant from home confinement.

Defendant properly filed and exhausted his administrative remedies.  On May 20, 2020 the Defendant received the following response from his BP-8:

"T¢he decision to remove your home confinement was not done by FCT Terre Haute staff."

Defendant has fully exhaused his administrative remedies but exhaustion is not required where it would be futile.

<u>CLAIMS FOR RELIEF</u>

<u>FIRST CLAIM FOR RELIEF</u>

**RELEASE TO HOME CONFINEMENT WHILE PENDING 2255**

The Defendant has the right to ask for immediate placement in Home Confinement while awaiting the appeal or decision of his 2255 which is before the court.

The 2255 has been before the court for now almost 5 years.  Since the Defendant is likely to prevail on the 2255 arguments, Home Confinement is appropriate.

The Government cannot prevail on the violation of the 6th Amendment denying the defendant the right to counsel of choice in violation of the Supreme Court decision in <u>Luis vs. United States</u>.

Facts are laid out in the 2255.  Here we have the Security and Exchange Commission seizing the Defendants assets both "tainted" and "untainted" in an extrordinary ex-parte seizeure.  The SEcurity and Exchange committed fraud upon the court by declaring that every asset seized was "tainted", part of a crime.

The SEC claimed originally in the Exparte order that Defendant was running a Ponzi scheme, stole $50 million dollars, moved it offshore, was depleating investor assets, was using investor money to buy luxury items like Ferrari's, boats, and luxurious vacations and hunting trips around the world.

When the case turned criminal, due to defendant refuseing to take a plea and demanding a trial, the SEC stayed the civil litigation and ther was never a trial to prove any of the allegations or to determine "tainted" vs "untainted" assets. Instead, the SEC claimed <u>ALL</u> assets seized where infact "tainted".  The SEC prosecutor, The same prosecutor who swore to the Federal Court that <u>ALL</u> assets seized were "tainted",

joined the criminal AUSA as a prosecutor in Johnaton Polish.

Now that the case turned criminal, and that there was no finding of any guilt in the Civil case as of this date, the Defendant enjoyed the Constitutional right provided under the 6th Amendment to Counsel of Choice. The Defendant asked for a hearing to releae 'untainted" funds to pay for Counsel of Choice. The record is void of any hearing. Falling on deaf ears, the Court took the Governments position, (and testimony from the SEC attorney Johnathon Polish) that the assets seized were all "tainted" assets. Without a hearing to determine such, the Defendant was denied the right to pay for counsel of choice and was appointed two incompetent attorneys to represent him in a "Complex" case.

In 2015, the United States Supreme Court made it clear in <u>Luis v. United States</u>, that the government could NOT make a non-indigent defendant indigent so they could not properly protect themselves from the intrusion of the Governemnt. That is exactly what happen here. We know now that , one: The SEC had no jurisdiction to bring a case against the Defendant in the first place. The Defendant was operating a Private company doing buisness with Private citizens. He was not ruled or regulated by the SEC. We know this because after defendants criminal trial the SEC moved for summary judgement in the civil case, manuvering again for no trial to prove facts and allegations. in the process the SEC Disgorged Bravata $7 Million dollars and stripped his licences, his security licences, his series 6, series 7, series 24 licences and barred him from the industry.

But the Appeals Court in <u>Bartko vs Security and Exchange Commission</u> reversed part of that order it had authority to do. THe Appeals Court stated, "The SEC has no jurisdiction to take away the security licences of Bravata. Since the Defendant was not under the jurisdiction of the SEC in running BBC Equities, the SEC cannot impose stripping him of his security licences and can not barr him from the industry." The SEC was forced to give Bravata his licences back and can not barr him from the industry. So Defendant asks a simple question: If the SEC had no jurisdiction to take away

Bravata's licences,.....how can they take away his money and assets?

Non the less we now know this as a fact also: The SEC claimed and the Government claims in the criminal case that all the assets seized were "tainted". All of them! But we know this is impossible. The SEC, AFTER seizing all assets both "tainted" and "untainted", and AFTER the criminal case was over, only disgoreged the Defendant $7 million dollars.

That means legally, prior to the start of the criminal case, the most the SEC or government could seize of the Defendants assets was the amount of the fraud which we now know to be $7 million dollars only. That means every asset over the $7 million was "untainted" and a hearing should have been given to determine Untainted assets. Emphasis is added that it is not the obligation of the Defendant to show "Untainted" assets. It is the burden of the government to show that any and all assets they seized is "tainted" and they have to show the NEXUS between that specific asset and a crime.

Its also important to point out that at the start of this trial, the Defendant was only  being charged with 14 individual counts of mail and wire fraud on 14 specific investors totaling $3.2 million in loss. That means legally the criminal case at this point in time was only allowed to seize assets totaling the amount of the fraud. Any and all other assets have to be released and should have been made available for the defendant to use to pay for counsel of choice all in violation of the 6th amendment and the Supreme Court decision in Luis v. United States.

Because the Government cannot claim that seizure of $400 million dollars in assets can possibly all be tainted, then the violation occred and a new trial is demanded.

## SECOND CLAIM FOR RELIEF

### Unconstitutional Conditions of Confinement, in violation of the Eighth Amendment to the U.S. Constitution

Under the Eighth Amendment, inmates have a right to be free from cruel and unusual punishment. As part of that right, the government must protect inmates and not expose them to "deliberate indifference" of prison officials that subjects them

to "substantial risk of serious harm. <u>Farmer v. Brennan,</u> 511 US 825, 828(1994). "Having stripped inmates of virtually every means of self protection and foreclosed their access to outside aid, the Government and its officials are not free to let the state of nature take its course." ID at 857.

"It is undiputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 US 25, 31(1993). In <u>McKinny,</u> the Supreme Court held that a Defendant properly stated a cause of action under the Eighth Amendment when confined in a cell with inmates who smoked cigarettes: "This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exsposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms." Id at 33. With respect to an impending infectious disease like COVID-19, deliberate indifference is demonstrated when correctional officers "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." Id.

Here we have the BOP stating there is an emergency from a pandemic Covid-19. They approve and release the Defendant three separate times, for he meets all criteria set by the BOP and Congress, yet the prosecutor, showing deliberate indifference, stops the Defendant from being released, exposing him to COVID-19, infact the Defendant contracted COVID-19 and was forced to suffer needlessly after the prosecutor intervened in his release not once but three times. Now the Defendant, in a minimum security camp is facing the threat of the DELTA Variant when he should be home.

The AUSA is aware of the serious risk COVID-19 and The DELTA Variant pose to

the defendant. The BOP has been directed by Congress and the Attorney General of the United States to release a class of inmates who meet the criteria of eligibility, they have approved Defendants release, and now the Prosecutor and BOP have failed to take meaningful action to reduce the population and have failed to mitigate the risk of harm to the Defendant by needlessly keepin him in custody.

No prejudice to the Government will result from releasing the Defendant to home confinement. The Defendant will continue to serve his sentence under more restrictive conditions and federal supervision. Given his current status as a minimum risk inmate at a minimum security facility with a work detail and out privleges, the Defendants status on home confinement culd potentially be as or more restrictive than his current status.

There are no mitigation efforts by the Government that could better prevent the risk of contraction and possible later spread to the non prison community than immediate release to home confinement of those non violent, minimum security, and minimum risk prisoners meeting the criteria set by Congress under the CARES ACT and by the Attorney General in his March and April 2020 memoranda to the BOP.

The Prosecutor and the BOP have therefore shown deliberate indifference to that risk and violate the Defendants constitutional rights.

The BOP at FCI Terra Haute is failing to follow thir own policies of maximizing home confinement, and have failed to uphold the directive of the Attorney General and more importantly the will of Congress in passing the CARES ACT. Defendant seeks this Court to enforce the BOP to follow the directive of Congress and not to thumb their nose as directives given by the people of the United States. Whether the Government agrees with the CARES ACT or not, they have a duty as this Court to enforce the laws and to ensure the laws are distributed evenly regardless of Race, sex, or creed.

The prosecutor has shown deliberate indifference in violating the 8th Amendment to cruel and unusual punishment by putting the defendant and his wife and children through emotional rollercoaster of approval and denial for no reason.

## THIRD CLAIM FOR RELIEF
### Substantive Due Process Violation, In Violation of the Fifth Amendment to the U.S. Constitution

The Fifth Amendment provides that "No person shall...be deprived of life, liberty, or property, (emphasis on property), without due process of law."

In Washington v. Glucksber, 521 U.S. 702, 720-21(1997), the Supreme Court articulated a two part analysis for substantive due process claims:

"First,we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.  Second, we have required in substantive due process cases a careful description of the asserted fundamental liberty interest."

There is no fundamental right more implicit to our concept of ordered liberty than a predictable, fair, and transparent criminal custody system that provides for the safety of society, including inmates.  "the Government may not interfere with the fundamental liberty interest of an individual, such as his interest in physical freedom, unless its actions are narrowly tailored to meet a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02(1993).

In fact, the Governments (prosecutor) actions to revoke home confinement based on the prosecutors input regarding release to home confinement, after the inmate has already been approved and processed for home confinement, and the family has been notified, that government action is not narrowly tailored to meet a compelling state interest.  The two most compelling state interests at issue here are protection of the public and protection of those in the care of the BOP.  The CARES ACT, the Attorney General's directives, and the BOP policies on home confinement are directed to address both of these compelling state interest.  Revoking home confinement approval without showing a state interest is not narrowly tailored to meet either compelling state interest.  Revoking home confinement greatly reduces the chances

that  the Defendant will be able to make full restitution payments, that Defendant is exsposed to much higher risk of serious illness from Covid-19 and the new Delta variant.  And there is a higher likelyhood of risk to staff and to the community at large.

The Governments interference in revoking home confinement after full BOP approval, whatever they might be, are not transparent.  They do not appear to be consistant, as the Defendant has watched hundreds of other prisoners who are similar situated, and who have served less of their sentence, who holds higher security rankings and higher recidivism scores be released.  He has wathced high profile inmates being released.  He has seen inmates with high victims and high restitution. All being released.

The Actions of the government have violated the Defendants substantive due process rights.

### FOURTH CLAIM FOR RELIEF

#### Procedural Due Process Violation, in Violation of the Fifth Amendment to the U.S. Constitution

The Fifth Amendment also protects the Defendants procedural due process rights, requiring the Goverment to afford him, at a minimum, notice, an opportunity to be heard, and a decision made by a neutral decision maker before his approval for home confinement and why the prosecutor felt it had grounds to revoke such approval.

A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends to freedom from deprivations that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. 472, 483-84(1995).

The Defendant does not have a right to be free from federal custody, as he lost that right before a criminal jury.  But he does have a right to be treated equally and justly under the laws and policies implemented as part of the CARES ACT and the Attorney Generals directives on home confinement for which he qualifies for.

13 of  20

The Defendant has not received an adequate explanation of why or how his approval for home confinement was approved three times through official channels includinjg multiple levels of bureaucracy, only to be revoked after it became final by a phone call from a prosecutor. The Governments interference and the giving and taking away of significant liberty with no procedural guidance, process, transparency, or opportunity to weigh in violates the Defendants due process rights.

Although the Defendant is arguably in no worse position now that he would have been otherwise, in that he is still at a federal camp as a minimum security inmate, that argument ignores the point that COVID-19 now poses a significant threat to all inmates. The reason for the CARES ACT in the first place was to remove as fast as possible as many inmates as possible who qualified for the requirements passed by congress to protect not only the inmate, but the staff and the community. The argument the Government loves to make is "the BOP has a handle on COVID-19" that is irrelavant. If the BOP had a handle on it, and they thought it was not in the best interest for home confinmeent then they would not pass the CARES ACT. It is not the governments position to try to make law or surcumvent the laws passed by congress. It is the duty of the government to follow the law and directives given to them. The Governments granting, denying and the granting and denying home confinement again with no adequate process or opportunity to be heard violates the Defendants procedural due process rights.

**FIFTH CLAIM FOR RELIEF**
**Arbitary and Capricious Action by Government Agency**
**5 U.S.C. 551-559, 701-706**

The Administrative Procedure Act (APA), 5 U.S.C. 551-559, 701-706, requires that courts "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary and capricious."

The Supreme Court held in <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,</u> 463 U.S. 29, 43(1983) that "normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended

14 of 20

it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

When an agency process is found arbitrary and capricious, "the reviewing court SHALL...Compel agency action unlawfully withheld or unreasonably delayed." 5 USC 706. The Government, Prosecutor, and BOP have imposed an arbitrary and capricious decision making process on the Defendant. Insofar as the Government and their agents relied on the prosecutors opposition to release the defendant, based on amount of restitution, victims, or even accusing the Defendant from running a business from prison, that reliance was improper. The Defendant has met all qualifications set by Congress. The Defendant has been approved for release not once but three times by the BOP. And to date, the Governement has not shown any reason for the revoking of home confinement as directed by Congress and the Attorney General. Nowhere in the BOP guidance, the Attorney Generals directive, the CARES ACT, or the statutes on home confinement (18 U.S.C. 3624(c)(1)-(2)) is this part of the criteria for consideration. Nowhere in the CARES ACT does it give or permitt a prosecutors opinion on release.

The fact that the BOP changed their process and ruling post facto based on a phone call, admitted by the government, from a single prosecutor who opposed the release of a non violent offender who otherwise qualifies for home confinement demonstrates an arbitrary and capricious agency process that is not fairly applied.

The BOP's process relied in this instance on factors Congress did not intend to consider and is arbitrary and capricious.

The Bureau of Prisons Standards of Employees Conduct Policy Statement 3420.11 shows that Warden Lammer, knowingly and intentionally is in violationof the BOP Administrative Procedures Act and is not following the Directives of the Attorney General and Congress in passing of the CARES ACT.  See Joel Samuel Paul  v.  Bureau of Prisons , US Dist. LEXIS 234819 No. 2:20-cv-066-JPH 7th Cir.  Where Mr. Paul, a Terra Haute Camp Inmate, was submitted for home confinement under the CARES ACT and was denied by the Warden, but in light of Mr. Pauls denial the District Court agreed in his favor and granted injunctive relief against the BOP pursuant to the Administrative Procedure Act.  BOP Employees Conduct Policy Statement 3420.11  Shows careless workmanship or negligence resulting in spoilage or waste of materials or delay in work production1.  Failure or delay in carrying out work assignment, or instructions of superiors.  Failure or delay in carrying out a direct order.

To demonstrate the blaintant disregard to inmate safety and the "deliberate indifference" shown by the BOP and the US Attorney.  This Defendant has been given no reason for the denial for which he fully qualifys for.  The BOP simply does not answer or show why.  But Exhibit 1 is a letter of denial given to inmate where he was DENIED home confinement, even though he met all qualifications under the CARES ACT for: "The assessment also includes verification that the conditions uder which the inmate would be confined upon release would be mopre effective in protecting their health than continued confinement at their present place of incarceration. Correctional Programs Division denied your Home Confinement placement based upon the totality of the aforementioned criteria, to include your vaccination status. You were offered the COVID-19 vaccination but declined .

Here the inmate was denied after meeting all  qualifications set by congress and all requirements Directed by the Attorney General, but the BOP in violation denied the inmate because ,He did not get vaccinated.  Adding their own, illegal and there own requirements above and beyound what Congress intended.

But this is the truth of the matter.  Exhibit 2 shows a second defendant, who again meets all the qualifications set by congress and the CARES ACT for release to Home Confinement but was also denied for the following reasons:

"The Assessment include verification that the conditions uder which the inmate would be confined upon release would be more effective in protecting their health than continued confinement at their present place of incarceration. **The medical review further revealed youreceived both dosages of the COVID-19 vaccination.** Correctional programs Division denied your Home Confinement placement based upon the totality of aforementioned criteria, **to include your vaccination status".**

It is very simple to see, if you did not get vaccinated, you get denied. If you get vaccinated you get denied. The decision by an individual, whether they choose    to get vaccinated, or due to alergies to the medication, religious beliefs, they choose not to get vaccinated is not a criteria set by Congress. The BOP has no authority to add criteria and to purposefully deny inmates violating the Administrative Procedure Act, the 5th and 8th Amenement to the Constitution. Clearly this is an Arbitary and Capricious Action by the Government Agency in violation of 5 U.S.C. 551-559, 701-706.

The Court has theauthority and duty to hold the BOP and the Government. to abide by the Directive of the Attorney General and the Congress to hold the standards set under the CARES ACT. The BOP and or Government, must show cause a State Interest or a violation or a requirement set by congress for which the defendant fails to qualify. Any other reason is unexceptable. The Government says, "The BOP makes the decision on home confinement" Bu the BOP has in this case APPROVED the defendant three times. It is the Governemt who is causing harm to the defendant. Emphasis is added on Joel Samuel Paul  v. Federal Bureau of Prisons, US DIst. LEXIS 234819 No.2:20-cv-066 7th Cir.

## EQUITIES SHOULD NOT BE IGNORED.

For the reasons discussed above, the Defendant qualifies for Home Confinement. The reality is hard to ignore that high profile and well connected inmates have been released to home confinement, like the presidents former personal attorney

Michael Cohen, the presidents former campaign manager Paul Manafort, and former Cuyahoga County auditor Frank Russo. Mafia and other organized Crime members all around the nation have been released. Inmates with multiple arrest and with higher risk, and pattern scores, and recidivisim scores have been released.

Manafort was convicted in 2019 of bank fraud and tax fraud, and he was slated to be released on Movember 4, 2024. Manafort owes $24.8 Million in restitution.

Cohen, age 52, was sentenced in 2018 to three years in prison for tax evasion, making false statements to a federally insured bank, and campaign finance violations. He owes $ 1.4 million in restitution.

Russo was serving a 14 year sentence for "a bevy of federal crimes" including accepting over $1 million in bribes, gifts and trips in exchange for jobs, contracts, and political favors, among other crimes. He was not scheduled to be released until October 2024 and owes $7 Million in restitution.

Other federal inmates who pose a greater risk of danger to the community than the Defendant are also being released to home confinement due to COVID-19, including Terry Flenory, one of the Black Mafia Family cocaine kingpins from Detroit "who headed one of the countrys most powerful cocaine empires that reaped $270 Million in profits." He was sentenced to 30 years in federal prison in 2008 for heading a national drug ring with ties to Mexican cartels and selling kilos of cocaine during a 15 year crime spree.

## CLOSING

The Defendant to be clear is asking this Court to enforce the laws set by Congress and the CARES ACT as it pertaine to this Defendants meeting all requirements Set by Congress to be immediaztely released to home confinement as reqquired and as directed by the Attorney General.

For Clarity, Home Confinement does not mean the Defendant returns to normal life, rather the defendant is subject to strictmonitoring and restictions by the Court and Probation for the remainder of his sentence.

There is no prejudice by the government if the Defendant in in Home Confinement of a Federal Camp with outcustody minimum security status.

The Governemnt cannot be allowed to thumb their nose to the law.  Can not be allowed to treat the defendant any different than any other inmate.  They should not be allowed to act in an arebitary and capricious action.  The facts are that this defendant has been incarceratged for over 11 years.  In that time he has earned the right to be placed in a minimum security camp.  He has a minimum security level, is able to work in the community, travels freely around the coumpound driving vehicles without supervison.  He has  a pattern score of 1.  He meets all criteria set by Congress to be immediately released to home confinement.  He has been approved not once but three times and has been signed off by the BOP from his counselor, camp administrator, legal team, the Warden, the region and Washington DC to be released. If not for the interference of a prosecuitor the Defendant would infact already be serving time in home confinement.

Now no matter what the government wants to allege, unless they present facts, the Defendant should be released as requested by Congress and the Attorney General.

The Government may be upset that the Defendant, which they believe, bought a $50 million dollar hotel in florida.  The Defendant does not admit nor deny this fact. This fact is irrelevant.  If the defendant has done something illegal in the purchase of a $50 million dollar hotel then let the prosecution present such facts.

If the government believes that the defendant is operating business from prison, again, let them bring the facts and any fiolation or wrong daing oh  behalf of the defendant.  The facts are clear, the defendant has never been diciplined, never been talked to in any fashion, on him doing anything wrong, illegal, or improper and not allowed.

If the defendant is confined to home confinement, the governement can continue to play their games and investigate anything they want.  If, at some point , they feel something is imporoper and can prove that, then they always have the ability

to revoke home confinement.  But up until that happens, the Court should enforce the laws and allow the Defendant to be immediatly released to home confinement.

Under home confinement, the Defendant will be under more scrutiny, and with have restrictions placed on him by this court and Probation.  If he violates that agreement he is aware that he will be revoked and placed back into a facility.

This is the only answer that protects the defendants rights and enforces the CARES ACT  and Directive of the Attorney General and ensures that the GOVERNMENT treats all inmates equally without DESCRIMINATION  This is also what is best for investors for if the defendant is allowed to work, the investors will see restitution.

The Defendant aske this court to act quickly in the decision based on the fact the defendant should have been reelased back in May of 2020, and everydday exposed the  defendant to COVID and the new DELTA Variant.

Summitted respectfully,

John Bravata #65565-053                    August 25,2021
Terra Haute Federal Correctional
Satalite Camp
PO Box33
Terra Haute, IN 47808

## CEERTIFICATE OF SERVICE

I Hohn Bravata, certify that on August 25, 2021 a copuy of the motion for release to home confinement was filed and sent to the governbment using US Mail through the Federal Correctional Facility,  They will also receive notice vba electronic notification through the court system.

Frances Carlson
Assistant United States Attorney
EEastern District of Michigan
211 West Fort St. Suite 2001
Detroit, MI 48226

EXHIBIT 1

DENIAL LETTER "due to not being vaccinated"

Remedy No.: 1089414-F1                                                    FCC Terre Haute, IN

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted July 29, 2021, wherein
you indicate you met all of the requirements for placement on Home Confinement.
You are asking to be informed in writing what specific requirement(s) you fail to meet,
re-consideration by the Correctional Programs Division under the CARES Act, as
well as the name of the Residential Reentry Manager (RRM) denying your request.

An extensive review of this matter revealed on July 22, 2021, the institution forwarded
a request to the Correctional Programs Division (CPD) branch, providing specific
information for their consideration of your request for placement on Home Confinement
based upon criteria set forth as a result of the CARES Act. On July 22, 2021, CPD
made a final decision that you would not receive further consideration from the RRM
for placement, which was ultimately based on one or more of the consideration
assessments.

When determining suitability for Home Confinement placement under the CARES Act,
the percentage of time served, age and vulnerability of the inmate to COVID-19 in
accordance with the Centers for Disease Control and Prevention (CDC) guidelines,
PATTERN score, verifiable reentry plan, the inmate's crime of conviction, detainer
status, gang affiliation/activity, and assessment of the danger posed by the inmate to
the community, incident report history, are all factors reviewed during the assessment.

The assessment also includes verification that the conditions under which the inmate
would be confined upon release would be more effective in protecting their health than
continued confinement at their present place of incarceration. Correctional Programs
Division (CPD) denied your Home Confinement placement based upon the totality of
aforementioned criteria, to include your vaccination status. You were offered the COVID-
19 vaccination but declined on March 1, 2021. It was determined you are suitable for
Camp placement.

Therefore, you may consider your Request for Administrative Remedy denied.

If you are dissatisfied with this response, you may appeal to the Regional Director,
North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Suite 800,
Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of
the date of this response.

_8/18/21_____                              _____
Date                                           B. Lammer, Warden

EXHIBIT 2

DENIAL LETTER "due to being vaccinated"

Remedy No.: 1089410-F1.                                               FCC Terre Haute, IN

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted July 29, 2021, wherein
you indicate you were denied placement on Home Confinement. You are asking for
a written explanation, and to be re-considered under the CARES Act.

You were reviewed for Home Confinement placement under the CARES Act as well
as guidance from the Attorney General. Specifically, on July 26, 2021, the institution
forwarded a request to the Correctional Programs Division (CPD) branch, providing specific
information for their consideration of your request for placement on Home Confinement
based upon criteria set forth as a result of the CARES Act. Your individualized review,
among other factors, consisted of balancing public safety against inmate safety with
substantial weight assigned to COVID-19 risk factors. The medical portion of your review
consisted of evaluating your medical conditions in accordance with the Centers for Disease
Control & Prevention (CDC) guidelines, as well as the updated Agency guidance. On July
27, 2021, CPD made a final decision that you would not receive further consideration from
the RRM for placement, which was ultimately based on one or more of the consideration
assessments.

When determining suitability for Home Confinement placement under the CARES Act, the
percentage of time served, age and vulnerability of the inmate to COVID-19 in accordance
with the Centers for Disease Control and Prevention (CDC) guidelines, PATTERN score,
verifiable reentry plan, the inmate's crime of conviction, detainer status, gang
affiliation/activity, and assessment of the danger posed by the inmate to the community,
incident report history, are all factors reviewed during the assessment.

The assessment also includes verification that the conditions under which the inmate would
be confined upon release would be more effective in protecting their health than continued
confinement at their present place of incarceration. The medical review further revealed you
received both doses of the COVID-19 vaccination. Correctional Programs Division (CPD)
denied your Home Confinement placement based upon the totality of aforementioned
criteria, to include your vaccination status. Therefore, it was determined you are suitable for
Camp placement.

Therefore, you may consider your Request for Administrative Remedy denied.

If you are dissatisfied with this response, you may appeal to the Regional Director,
North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Suite 800,
Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the
date of this response.

_8/19/21_
Date                                           B. Lammer, Warden

EXHIBIT 3

Promoation of BOP to get inmates vaccinated
so they can deny them release and showing 62%

# FCC Terre Haute

# Inmate Bulletin



## Inmate Vaccination Incentives

In an effort to increase the number of individuals vaccinated and mitigate the likelihood of you contracting the novel Coronavirus (COVID-19), or mitigating the impact a COVID-19 infection would have on you, we will begin implementing Housing Unit incentives for vaccination.

To date, approximately 62% of the inmate population at FCC Terre Haute has received the vaccination in one form or another. In an effort to continue towards normal operations, this percentage must continue to increase. To that end, beginning with the issuance of this Bulletin, the following incentives are being implemented to the first two FCI & FPC Housing Units who achieve an 80% or greater vaccination rate, and will begin today through September 30, 2021.

- **First Place**- (2) Late Nights during football season, and (1) movie night with popcorn (movie night is not a late night); this will include Monday night football upon the commencement of NFL football season.
- **Second Place**- (1) Late Night during football season, and (1) movie night with popcorn (movie night is not a late night).

If you would like to sign up to receive the vaccination, please contact Health Services.

_8/20/21_

Date

B. Lammer, Warden

JOH
FELIX
Terra Haute
Satilite Camp
P.O. Box 33
Terra Haute, IN. 47808

Attention: Clerk Judge Brenan

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF Michigan
231 WEST LAFAETTE BLVD
DETROIT, Michigan, 48226

U.S. MARSHALS

Keep Legal Mail

